# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

**ALLEGRA NETWORK LLC and
ALLEGRA HOLDINGS, LLC,**

**Plaintiffs,**

**v.**

**HERSCHEL B. RHODES,
TINA RHODES, and
RHODESCO, INC.,**

**Defendants.**

Case No.: **15-cv-13965**

## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiffs Allegra Network LLC ("Allegra Network") and Allegra Holdings, LLC ("Allegra Holdings") (collectively, "Allegra"), for their complaint against defendants Herschel B. Rhodes, Tina Rhodes, and RhoDESCO, Inc., state as follows:

## INTRODUCTION

1.      For the past thirty years defendants' print business has been operated as a franchised location of Allegra and its predecessor. Throughout all those years the business has enjoyed and benefited from the use of Allegra's trademarks and trade names, and the know-how, intellectual property, and proprietary and confidential information that Allegra and its predecessor had developed, tested,

1

refined, and perfected over the course of decades and at tremendous effort and expense. Allegra granted defendants the right to use Allegra's trademarks and know-how in a written franchise and license agreement dating back to 1985. In that agreement, and in its several subsequent renewals, defendants promised Allegra that upon termination of the agreement they would not use all that they had learned as Allegra franchise owners to compete with Allegra or its other franchise owners. Specifically, they agreed that upon the agreement's termination they would not be associated, directly or indirectly, with any business located within ten miles of their former franchise or within five miles of any other Allegra franchise, that is the same or similar to their former Allegra franchise, as an employee, proprietor, partner, stockholder, officer, agent, or otherwise.

2.     On May 14, 2015, defendants informed Allegra that they would not renew their franchise and license agreement when it expired on September 28, 2015. Allegra acknowledged defendants' election not to renew the agreement and reminded defendants in writing of their post-termination obligations under the agreement. Defendants responded by telling Allegra that, while they would fulfill all of their other obligations, they had no intention of honoring their noncompetition covenant. And they have lived up to their threat. Starting even several days before the agreement terminated, defendants began operating their

competing business at the same location where the franchised business had operated for nearly twenty of the thirty years of operation.

3.     Defendants' misconduct violates the promise they made to Allegra when they acquired their franchise and that they reaffirmed every time they elected to renew their franchise agreement, and without which Allegra would not have granted them a franchise or renewed it. Defendants' unlawful disregard of their contractual commitments is now causing Allegra to suffer immediate and irreparable harm—including the pilfering of its know-how and intellectual property and the impairment of its substantial goodwill and reputation—and threatens to undermine the entire Allegra system. For this reason, Allegra brings this action to enjoin defendants' misconduct and for other appropriate relief.

## **PARTIES**

4.     Plaintiff Allegra Network is a Michigan limited liability company with its principal place of business in Plymouth, Michigan. None of its members is a citizen of Colorado.

5.     Plaintiff Allegra Holdings is a Michigan limited liability company with its principal place of business in Plymouth, Michigan. None of its members is a citizen of Colorado.

6.     Defendant RhoDESCO, Inc. ("RhoDESCO") is a Colorado corporation with its principal place of business in Colorado Springs, Colorado.

3

7.     Defendant Herschel B. Rhodes is a citizen and resident of the State of Colorado.

8.     Defendant Tina Rhodes is a citizen and resident of the State of Colorado.

## JURISDICTION AND VENUE

9.     The Court has original subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338, and 1367, in that this is a civil action involving claims arising under the laws of the United States, including an Act of Congress relating to trademarks, and wherein all other claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy.

10.    The Court also has original subject matter jurisdiction of this action under 28 U.S.C. § 1332(a)(1), in that this is a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different States.

11.    Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial district and defendants consented, in writing, to venue in this judicial district.

## **FACTUAL BACKGROUND**

## **The Allegra Franchise System**

12.     Allegra Network is engaged in the highly-competitive print and marketing communication industry. It develops and distributes a full range of digital and conventional offset printing, large format printing, marketing, copying, electronic pre-press, bindery, and mailing services and products to businesses and to the general public throughout this judicial district, the State of Michigan, the United States, and Canada.

13.     Allegra Network's services and products are distributed throughout the United States through authorized Allegra Network franchise owners who operate their franchised businesses pursuant to written franchise and license agreements with Allegra Network.

## **The Allegra Marks, Trade Secrets, and Confidential Information**

14.     To identify the source, origin, and sponsorship of its products and services, and to distinguish those products and services from those established, made, offered, and sold by others, Allegra Network and its authorized franchise owners have extensively used certain trademarks, service marks, trade names, logos, emblems, and indicia of origin, including but not limited to the "Allegra" mark (the "Allegra Marks") and the logo modifiers below the Allegra mark, which could include any three of the modifiers "MARKETING," "PRINT," "MAIL,"

5

"DESIGN," "SIGNS," and "WEB," in connection with the operation of authorized Allegra centers.

15.     The Allegra Marks are owned by Allegra Holdings. Allegra Holdings licenses the Allegra Marks to Allegra Network. Allegra Network has the full right and authority to use and to sublicense its franchise owners' use of the Allegra Marks.

16.     Pursuant to franchise and license agreements entered into by Allegra Network and its authorized franchise owners, Allegra Network grants franchises to qualified persons to own and operate Allegra print and marketing communication centers, together with a limited license to use the Allegra Marks in connection therewith, but only in such manner and at such locations as are expressly authorized by Allegra Network in the franchise and license agreements.

17.     The Allegra Marks are registered on the Principal Register of the United States Patent and Trademark Office. The registration of the Allegra Marks continues in full force and effect.

18.     Allegra Holdings has given notice to the public of the registration of the Allegra Marks as provided in 15 U.S.C. § 1111 and complies with all legal requirements to ensure that it and its authorized licensees remain the exclusive users of the Allegra Marks.

19.    Allegra Network, Allegra Holdings, and their authorized franchise owners and licensees have continuously used the Allegra Marks in interstate commerce in connection with the promotion, sale, and franchising of Allegra print and marketing communication centers, and the promotion and sale of the products and services they offer throughout the United States, since the date of their registration.

20.    Allegra Network, Allegra Holdings, and their authorized franchise owners and licensees have extensively advertised and promoted the Allegra Marks and the products and services they offer in association with those marks throughout the United States and through various media. As a result of such efforts and the considerable money spent in connection therewith, the products and services offered by Allegra Network and its authorized franchise owners under the Allegra Marks have been met with widespread public approval and have established demand and goodwill among business customers and consumers throughout the United States.

21.    Further, pursuant to written franchise and license agreements, Allegra Network grants its franchise owners the right to use its know-how, trade secrets, and confidential methods, materials, and information for the establishment and operation of franchised print and marketing communication centers, all of which Allegra Network and its affiliates have developed at great effort and expense and

which afford Allegra Network and its authorized franchise owners a tremendous competitive advantage in the print and imaging industry.

## Defendants' Franchise Agreement and Guarantee

22.    On September 28, 1985, Allegra's predecessor, American Speedy Printing Centers, Inc. ("ASPCI"), as franchisor, entered into a written franchise and license agreement with Gerhardt Services, Inc., Carl F. Gerhardt, and Judith A. Gerhardt (collectively, the "Original Franchise Owners"), as franchise owners, pursuant to which ASPCI granted them the right to establish, own, and operate an American Speedy Printing Center in Colorado Springs, Colorado, for a term of twenty years (the "Franchise Agreement"). A copy of the Franchise Agreement is attached as Exhibit 1.

23.    On March 18, 1997, ASPCI and the Original Franchise Owners executed an amendment to the Franchise Agreement pursuant to which ASPCI authorized the Original Franchise Owners to use the Allegra Print & Imaging name and the Allegra Marks. All references to "American Speedy Printing Center" in the Franchise Agreement were therefore replaced with the phrase "Allegra" or "Allegra Print & Imaging."

24.    In 1998 or 1999, the Original Franchise Owners relocated, with ASPCI's approval, their center to 3910 Sinton Road Colorado Springs, Colorado 80907.

25.    In October 2000, as part of a corporate restructuring, ASPCI assigned the Franchise Agreement to Allegra Network.

26.    On January 1, 2002, Carl F. Gerhardt and Judith A. Gerhardt sold the stock of Gerhardt Services, Inc. to Herschel B. Rhodes and Tina Rhodes.

27.    On November 15, 2002, the Original Franchise Owners filed Articles of Amendment to the Articles of Incorporation with the Colorado Secretary of State to change the name of "Gerhardt Services, Inc." to "RhoDESCO, Inc."

28.    Effective January 1, 2003, the Original Franchise Owners transferred the franchise and sold the assets of Gerhardt Services, Inc. to defendants, and the individual defendants agreed to be personally bound by the obligations in the Franchise Agreement (the "Guarantee"). Attached as Exhibit 2 is a copy of the Guarantee.

29.    On January 25, 2005, Allegra Network and defendants executed a renewal addendum to the Franchise Agreement extending its term until September 28, 2010 and providing that the term could be extended up to three more times, each for an additional five years (the "Renewal Addendum"). Attached as Exhibit 3 is a copy of the Renewal Addendum.

30.    Effective January 1, 2010, and as part of a system-wide policy relating to the use of the Allegra Marks, defendants were required to remove all references to "Print & Imaging" and replace them with any three of six defining modifiers

9

("MARKETING," "PRINT," "MAIL," "DESIGN," "SIGNS," and "WEB") below the Allegra trademarked logo. Defendants operated as Allegra PRINT • MAIL • SIGNS.

31.    At all times, defendants operated their franchised Allegra center at 3910 Sinton Road, Colorado Springs, Colorado 80907 (the "Center" or "Allegra Center").

32.    Defendants enjoyed the full and complete benefit of the franchise granted to them under the Franchise Agreement during the entire initial term and two renewal terms.

33.    Allegra at all times fully performed all of its obligations under the Franchise Agreement.

**Defendants' Contractual Obligations**

34.    Defendants acknowledged and agreed that, as Allegra Network franchise owners, they would receive, and they in fact received, Allegra Network's trade secrets, confidential information, and know-how for use solely in connection with the operation of their Allegra Center.

35.    During the course and within the scope of the franchise relationship with Allegra Network, defendants were entrusted with Allegra Network's trade secrets, confidential information, and know-how, none of which is available or accessible to, or known to or ascertainable by, competitors.

10

36.    Allegra Network and its predecessor invested substantial time, effort, and expense in developing, testing, refining, and perfecting the trade secrets, confidential information, and know-how that comprise its proprietary operating systems ("the Allegra Systems") for the operation of Allegra print and marketing communication centers. Allegra disclosed to defendants the Allegra Systems solely in their capacity as Allegra Network franchise owners, and that disclosure afforded defendants a significant competitive advantage over their competitors.

37.    The Allegra Systems are critical to Allegra Network and its authorized franchise owners' ability to operate their Allegra centers and to maintain their competitive advantage in the highly competitive print and marketing communication industry.

38.    Allegra Network would be irreparably harmed were the Allegra Systems, or any component of them, revealed to or used by a competitor, including defendants in the unlawful operation of a competitive business.

39.    Defendants specifically agreed not to use or disclose any of the Allegra Systems and to use them solely in connection with the operation of their authorized Allegra Center and only as expressly authorized under the Franchise Agreement.

40.    Defendants also explicitly agreed that during the term of the agreement they would not engage in any similar business to the Allegra centers

anywhere, and that for a two-year period following its termination they would not engage in the same or similar business within ten miles of their Allegra Center or within five miles of any other Allegra center.

41.    Defendants also agreed that, upon termination of the Franchise Agreement, they would immediately cease using the Allegra Marks and the Allegra Systems.

42.    The noncompetition covenant is designed and necessary to protect Allegra's intellectual property, including the Allegra Systems, its brand, goodwill and reputation, and the integrity of the Allegra network of franchised locations.

43.    Defendants further agreed that, in the event that they engaged in unauthorized use of the Allegra Marks or violated their nondisclosure and noncompetition obligations, injunctive relief should issue to enjoin any further violations and that Allegra Network would be entitled to recover its costs and expenses, including attorneys' fees, incurred in enforcing defendants' obligations.

**Defendants Elect Not to Renew the Franchise Agreement and it Expires**

44.    Defendants renewed the Franchise Agreement for a second five-year term in 2010 but elected not to renew it for a third five-year term when it expired on September 28, 2015.

45.    In the months preceding termination, Allegra reminded defendants of their obligations under the Franchise Agreement and Guarantee, including their

obligations not to use or disclose the Allegra Marks or the Allegra Systems and their noncompetition covenant.

### Defendants' Breaches of the Franchise Agreement and Guarantee

46.    On September 25, 2015, days before the Franchise Agreement terminated, defendants began advertising and operating a competing business at the same location as their former Allegra Center. That competitive business offers products and services that are identical to those defendants offered at their former Allegra Center, including the same design, print, copying, and mailing products and services they offered as Allegra franchise owners. Even RhoDESCO's logo modifiers ("RhoDESCO Print • Mail • Design") duplicate Allegra's logo modifiers.

47.    Defendants also continue to use the Allegra Marks and name to highlight their former association with Allegra on their social media sites, including Twitter and Google+, which not only constitutes trademark infringement and unfair competition but is also expressly prohibited under the Franchise Agreement and Guarantee.

48.    Defendants are trading off of Allegra's goodwill and reputation and exploiting the Allegra Systems in connection with the operation of their unlawful competitive business.

49.    Allegra, both directly and through counsel, has demanded that defendants honor their contractual commitments, but defendants continue to refuse to comply with them.

**Defendant RhoDESCO's Interference
With Allegra Network's Contractual Relationship**

50.    On October 8, 2013, Bernadette DuBois ("DuBois"), as covenantor, entered into a confidentiality and non-competition agreement with Allegra Network, as franchisor, pursuant to which Allegra Network granted DuBois access to the Allegra Systems for use as a key employee at defendants' Allegra Center (the "DuBois Agreement"). Attached as Exhibit 4 is a copy of the DuBois Agreement.

51.    Defendant Herschel B. Rhodes specifically agreed that the DuBois Agreement was a necessary and material term of the Franchise Agreement and a precondition to employing DuBois to work at defendants' Allegra Center because performance of her duties as a key employee would require access to the Allegra Systems.

52.    As a key employee at defendants' Allegra Center, DuBois had access to and used each component of the Allegra Systems.

53.    DuBois agreed in the DuBois Agreement that she would, during the term of defendants' Franchise Agreement and thereafter, maintain the absolute

14

confidentiality of the Allegra Systems and that she would not use any component of the Allegra Systems in any other business or capacity.

54.    DuBois also agreed that for a two-year period following termination of defendants' Franchise Agreement she would not have any interest in, or perform services as a manager, employee, or otherwise for, a business offering or selling products or services offered or sold at Allegra centers within ten miles of defendants' Allegra Center or within five miles of any other Allegra center.

55.    Despite termination of the Franchise Agreement, and with actual knowledge of the DuBois Agreement, defendant RhoDESCO employed and continues to employ DuBois as the General Manager of its competing business at the same location as its former Allegra Center.

## COUNT I - TRADEMARK INFRINGEMENT

56.    Allegra repeats and realleges ¶¶ 1 through 55 of its complaint as if fully set forth herein.

57.    Defendants' acts, practices, and conduct constitute an infringing use in interstate commerce of the Allegra Marks and are likely to cause consumer confusion or mistake and deceive the public in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

58.    Defendants' wrongful acts were, and continue to be, knowing and willful.

15

59.    As a direct and proximate result of defendants' infringement, Allegra has been and is likely to be substantially injured in its business, including its business reputation and the goodwill associated with the Allegra Marks, resulting in lost revenues and profits, and diminished goodwill and reputation.

60.    Allegra has no adequate remedy at law because the Allegra Marks are unique and represent to the public Allegra's identity, reputation and goodwill, such that damages alone cannot fully compensate Allegra for defendants' misconduct.

61.    Unless enjoined by the Court, defendants will continue to use and to infringe the Allegra Marks to Allegra's irreparable injury. This threat of injury to Allegra's business, identity, goodwill, and reputation requires injunctive relief to prevent defendants' continued use of the Allegra Marks and to ameliorate and mitigate Allegra's injuries.

## COUNT II - UNFAIR COMPETITION

62.    Allegra repeats and realleges ¶¶ 1 through 61 of its complaint as if fully set forth herein.

63.    Defendants' acts, practices, and conduct constitute unfair competition, and false or misleading descriptions or representations of fact, in that they are likely to cause confusion or mistake, to deceive others as to the affiliation, connection, or association of the parties, and/or to misrepresent the nature, characteristic, qualities, or geographic origin of the parties' goods, services, and

16

commercial activities, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

64.    Defendants' use of the Allegra Systems in connection with their operation of a competing business also constitutes unfair competition.

65.    Defendants' acts were, and continue to be, knowing and willful.

66.    As a direct and proximate result of defendants' unfair competition, Allegra has been and is likely to be substantially injured by defendants' misconduct, including, but not limited to, the diminution in the value of the Allegra Marks and the Allegra Systems, loss of its competitive advantage, and injury to its goodwill and reputation, among other irreparable harms.

67.    Allegra has no adequate remedy at law because the Allegra Marks are unique and represent to the public Allegra's identity, reputation, and goodwill, such that damages alone cannot fully compensate Allegra for defendants' misconduct.

68.    Allegra Network also has no adequate remedy at law because the components of the Allegra Systems are unique, were developed, tested, refined, and perfected at great expense and effort, and afford Allegra Network and its authorized franchise owners a competitive edge that is lost if defendants are permitted to continue to use them, none of which can be quantified and for which

monetary damages alone cannot fully and completely compensate Allegra Network.

69.    Unless enjoined by the Court, defendants will continue to compete unfairly with Allegra to Allegra's irreparable injury. This threat of injury to Allegra and its business requires that injunctive relief issue to prevent defendants' continued unfair competition and to ameliorate and mitigate Allegra's injuries.

## COUNT III - BREACH OF CONTRACT: FRANCHISE AGREEMENT
## SPECIFIC PERFORMANCE

70.    Allegra Network repeats and realleges ¶¶ 1 through 69 of its complaint as if fully set forth herein.

71.    Defendants' failure and refusal to comply with their obligations under the Franchise Agreement, including their noncompetition covenant and their obligations not to use or disclose the Allegra Systems constitute material breaches of the Franchise Agreement.

72.    As a result of these ongoing breaches, Allegra Network has suffered and will continue to suffer actual, substantial, and irreparable damage, including, but not limited to, loss of customer goodwill and loyalty, franchise system instability, the inability to refranchise the territory formerly serviced by defendants' Allegra Center, lost profits, diminution in the value of the Allegra Systems, and loss of competitive advantage.

73.     Allegra Network has no adequate remedy at law because the Allegra Systems are unique, were developed at great expense and effort, and afford Allegra Network and its authorized franchise owners a competitive edge that is lost if defendants are permitted to continue to use them, none of which can be quantified and for which monetary damages alone cannot fully and completely compensate Allegra Network.

74.     Defendants will continue to breach the Franchise Agreement unless their wrongful conduct is enjoined.

## COUNT IV – BREACH OF CONTRACT: GUARANTEE
## SPECIFIC PERFORMANCE

75.     Allegra Network repeats and realleges ¶¶ 1 through 74 of its complaint as if fully set forth herein.

76.     The individual defendants' failure and refusal to comply with the noncompetition and nondisclosure obligations of the Franchise Agreement constitutes material breaches of the Guarantee.

77.     As a result of their ongoing breach, Allegra Network has suffered and will continue to suffer actual, substantial, and irreparable damage, including, but not limited to, loss of customer goodwill and loyalty, franchise system instability, the inability to refranchise the territory formerly serviced by defendants' Allegra Center, lost profits, diminution in the value of the Allegra Systems, and loss of competitive advantage.

78.    Allegra Network has no adequate remedy at law because the Allegra Systems are unique, were developed at great expense and effort, and afford Allegra Network and its authorized franchise owners a competitive edge that is lost if defendants are permitted to continue to use them, none of which can be quantified and for which monetary damages alone cannot fully and completely compensate Allegra Network.

79.    The individual defendants will continue to breach the Guarantee unless their wrongful conduct is enjoined.

## COUNT V – BREACH OF CONTRACT
### DAMAGES

80.    Allegra Network repeats and realleges ¶¶ 1 through 79 of its complaint as if fully set forth herein.

81.    Defendants' failure and refusal to comply with their obligations not to compete and their obligations not to use or disclose the Allegra Systems constitute material breaches of the Franchise Agreement.

82.    As a direct and proximate result of defendants' material breaches of the Franchise Agreement, Allegra Network has sustained damages in amount in excess of $75,000, exclusive of interest and costs, to be proved at trial.

## COUNT VI – BREACH OF GUARANTEE
### DAMAGES

83.   Allegra Network repeats and realleges ¶¶ 1 through 82 of its complaint as if fully set forth herein.

84.   The individual defendants' failure and refusal to comply with the noncompetition and nondisclosure obligations of the Franchise Agreement constitutes material breaches of the Guarantee.

85.   As a direct and proximate result of the individual defendants' material breaches of the Guarantee, Allegra Network has sustained damages in amount in excess of $75,000, exclusive of interest and costs, to be proved at trial.

## COUNT VII – TORTIOUS INTERFERENCE WITH CONTRACT
### INJUNCTION AND DAMAGES

86.   Allegra Network repeats and realleges ¶¶ 1 through 85 of its complaint as if fully set forth herein.

87.   The DuBois Agreement is a valid and enforceable confidentiality and noncompetition agreement.

88.   RhoDESCO had and has actual knowledge of the DuBois Agreement and its terms.

89.   RhoDESCO wrongfully and intentionally caused DuBois to breach the DuBois Agreement by offering her employment at its unlawful competitive business and subsequently employing her.

21

90.     But for RhoDESCO's tortious inducement of her breach, DuBois would have honored her obligations under the DuBois Agreement.

91.     RhoDESCO's actions were, and continue to be, intentional, wrongful, and malicious.

92.     As a result of RhoDESCO's actions, Allegra Network has suffered and will continue to suffer actual, substantial, and irreparable damage, including, but not limited to, loss of customer goodwill and loyalty, franchise system instability, the inability to refranchise the territory formerly serviced by defendants' Allegra Center, lost profits, diminution in the value of the Allegra Systems, and loss of competitive advantage.

93.     RhoDESCO will continue to intentionally interfere with Allegra Network's contractual rights under the DuBois Agreement unless enjoined.

94.     As a direct and proximate result of RhoDESCO's actions, Allegra Network has been damaged in an amount to be proven at trial.

95.     Because RhoDESCO's tortious interference with the DuBois Agreement was and continues to be willful and malicious, Allegra Network is entitled to an award of punitive damages against this defendant.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Allegra respectfully prays for the following relief against defendants, jointly and severally, as follows:

A.     A preliminary and permanent injunction enjoining defendants, and each of them, and their respective agents, servants and employees, and those people in active concert or participation with them from:

1.     Using the Allegra Marks, or any trademark, service mark, logo, trade name, or logo modifiers that is confusingly similar to the Allegra Marks and logo modifiers;

2.     Otherwise infringing the Allegra Marks or using any similar designation, including the Allegra logo modifiers, alone or in combination with any other components;

3.     Passing off any products or services as those of Allegra Network, Allegra Holdings, or Allegra Network's authorized franchise owners;

4.     Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of their business, products, or services;

5.     Causing a likelihood of confusion or misunderstanding as to their affiliation, connection, or association with Allegra Network, Allegra Holdings, or Allegra Network's franchise owners, or with any of their products or services; and

6.     Unfairly competing with Allegra Network, Allegra Holdings, or Allegra Network's franchise owners, in any manner.

B.     A preliminary and permanent injunction directing defendants, and each of them, and their respective agents, servants, and employees, and those people in active concert or participation with them, to fully perform their contractual obligations, including, without limitation, their obligations (i) to refrain from competing with Allegra Network in the manner required by the Franchise Agreement and Guarantee and (ii) to cease any and all use or disclosure of any component of the Allegra Systems;

C.     A preliminary and permanent injunction directing defendant RhoDESCO and its respective agents, servants and employees, and those people in active concert or participation with it, to cease interfering with Allegra Network's contractual rights under the DuBois Agreement, including, without limitation, the noncompete, confidentiality, and nondisclosure obligations;

D.     An order that defendants file with the Court and serve upon Allegra's counsel within ten (10) days after entry of any injunction or order issued herein, a written report, under oath, setting forth in detail the manner in which they have complied with such injunction or order;

E.     An order that defendants account and pay over to Allegra all gains, profits, and advantages derived by them as a result of their infringement of the Allegra Marks and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. § 1117;

24

F.     An order that defendants pay to Allegra such damages as they have sustained by reason of defendants' trademark infringement and unfair competition, and that, because of the willful nature of said infringement, the Court enter judgment for Allegra in an amount equal to three times the amount of said damages, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117;

G.     An award of the costs and expenses, including reasonable attorneys' fees and costs, incurred by Allegra in connection with this action, as provided by the Franchise Agreement and Guarantee;

H.     Judgment in favor of Allegra and against defendants, jointly and severally, in amounts to be proven at trial;

I.     An award of punitive damages against defendant RhoDESCO in an amount that will punish it and deter it and others from engaging in similar tortious conduct; and

J.     Such other and further relief as the Court deems just and proper.


Dated:        November 11, 2015            Respectfully submitted,

                                           **ALLEGRA NETWORK LLC and
                                           ALLEGRA HOLDINGS, LLC**


                                           By: /s/ Fredric A. Cohen_____
                                                 One of their Attorneys


25

Fredric A. Cohen (IL #6198606)
Marlén Cortez Morris (IL #6291488)
CHENG COHEN LLC
311 N. Aberdeen Street, Suite 400
Chicago, IL 60607
(312) 243-1701
fredric.cohen@chengcohen.com
marlen.cortez@chengcohen.com

James M. McAskin (P72930)
BROOKS WILKINS SHARKEY & TURCO PLLC
401 S. Old Woodward, Suite 400
Birmingham, Michigan 48009
(248) 971-1716
mcaskin@bwst-law.com

*Attorneys for Plaintiffs Allegra Network LLC*
*and Allegra Holdings, LLC*